IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

ALCAN INVESTMENTS, LLC, et al.,    )
                                    )
    Plaintiffs,                     )
                                    )
v.                                  )  CIVIL ACTION 09-0492-WS-N
                                    )
C-D JONES & COMPANY, INC., et al., )
                                    )
    Defendants.                     )

## ORDER

    This motion is before the Court on the plaintiffs' motions to remand. (Docs. 22, 24). The defendants have filed responses and the plaintiffs replies, (Docs. 28, 30, 34, 35), and the motions are ripe for resolution. After carefully considering the foregoing materials, the Court concludes that the motions to remand are due to be granted.

## BACKGROUND

    In May 2007, the plaintiffs sued the five defendants in the Circuit Court of Mobile County, alleging violations of the Interstate Land Sales Full Disclosure Act ("ILSA") and various state laws. On July 30, 2009, one defendant filed a voluntary petition in the Bankruptcy Court for the Northern District of Florida. Another defendant then removed this action on August 3. Removal was accomplished pursuant to 28 U.S.C. § 1452(a), which allows for removal of claims or causes of action related to a bankruptcy case, with removal made to the district court for the district in which the civil action is pending. Thus, removal was made to this Court rather than to the Northern District of Florida or to the Bankruptcy Court for this district.

    Accompanying its notice of removal, the removing defendant filed a motion under 28 U.S.C. § 1412 to transfer venue to the Bankruptcy Court for the Northern District of Florida, as well as a motion for a temporary stay of proceedings pending a decision on

transfer.  (Docs. 13, 14).  The following day, one plaintiff filed a motion for expedited reference to the Bankruptcy Court for the Southern District of Alabama.  (Doc. 16).  Within a few days, the plaintiffs filed their separate motions to remand.  Both motions contained alternative motions for abstention pursuant to 28 U.S.C. § 1334(c).

## DISCUSSION

Plaintiff Myles has requested the Court to "immediately" refer this action to the Bankruptcy Court for this district.  (Doc. 16 at 3-4).  The removing defendant, while not formally opposing the motion, asserts that having the Court retain the action will decrease delay and advance judicial economy, and it points out that these constitute good grounds to withdraw an order of reference.  The Court agrees.  The standing order of reference, to the extent it applies, is therefore **withdrawn**.  The motion for expedited reference, (Doc. 16), is **denied**.

Invoking what it terms a "conduit court theory," the removing defendant argues that the Court should decide the motion to transfer before considering the plaintiffs' motion to remand.  The idea is that the interests of judicial economy are best served by first transferring the case to the bankruptcy court hearing the underlying bankruptcy case and allowing it to decide the motion to remand.  Most of the cases on which the defendant relies are authored by bankruptcy judges and so are of uncertain import.  While the defendant does cite one district court case leaving for the transferee bankruptcy court the resolution of a motion to remand, the plaintiffs cite another Section 1452(a) case for the proposition that subject matter jurisdiction, as a threshold matter, must be determined before non-jurisdictional matters (including venue) are addressed.  *Lone Star Industries, Inc. v. Liberty Mutual Insurance*, 131 B.R. 269, 272 (D. Del. 1991).  The Court agrees.

While the question of subject matter jurisdiction can be raised at any time, 28

U.S.C. § 1447(c),[1] "a court should inquire into whether it has subject matter jurisdiction at the earliest possible stage in the proceedings." *University of South Alabama v. American Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999).[2]  "Moreover, a federal court must remand for lack of subject matter jurisdiction notwithstanding the presence of other motions pending before the court." *Id.* at 411.  Subject matter jurisdiction, in short, is a threshold matter that should be determined first.  That principle counsels the Court to resolve the motion to remand prior to the motion to transfer venue.

Even were the Court to consider the conduit court theory, the result would not change.  The theory depends on the premise that there are judicial efficiencies to be gained by deferral.  When the motion to remand challenges whether the removed claim is "related to" a bankruptcy case, perhaps these efficiencies exist.[3]  The question before the Court, however, is the very different one of whether removal under Section 1452(a) is barred by the non-removal provision contained in ILSA.  As discussed below, this is not an issue with which the bankruptcy courts have experience, and its resolution is not enhanced by familiarity with the bankruptcy proceedings.  There could thus be no judicial efficiencies to be realized by deferring the motion to remand to a bankruptcy court, which eliminates the defendant's only articulated basis for such a deferral.

In the alternative, the removing defendant suggests it would violate the automatic

---

[1]Section 1447(c) applies to cases removed under Section 1452(a).  *Things Remembered, Inc. v. Petrarca*, 516 U.S. 124, 127-29  (1995).

[2]A motion to remand based on a statutory prohibition on removal arguably goes to the Court's subject matter jurisdiction.  *Williams v. AFC Enterprises, Inc*., 389 F.3d 1185, 1190 (11th Cir. 2004).

[3]*See Marquette Transportation Co. v. Trinity Marine Products, Inc*., 2006 WL 2349461 at *2 (E.D. La. 2006) ("[B]ecause the jurisdictional question in this matter is necessarily intertwined with the pending bankruptcy proceedings, the Court finds that first considering defendants' transfer motions will serve the interest of judicial economy and that the bankruptcy court is best suited to resolve the issue of section 1334 ["related to"] jurisdiction.").

stay for the Court to consider the motions to remand.[4]  As a general rule, however, the automatic stay does not extend to non-debtors.  *E.g., Brown v. Jevic*, 2009 WL 2342731 at *4 (3rd Cir. 2009) (citing First, Fourth and Seventh Circuit cases); *Boucher v. Shaw*, 572 F.3d 1087, 1094 (9th Cir. 2009); *American Prairie Construction Co. v. Hoich*, 560 F.3d 780, 789 (8th Cir. 2009) (citing a Second Circuit case).  Removal was effected by a non-debtor, and all motions were filed and/or argued non-debtor defendants.  These defendants have not endeavored to explain how the automatic stay could extend to them.  If, as seems clear, it does not, neither could it impact the Court's consideration of the motion to remand as to them.[5]

At any rate, the weight of authority presented runs counter to the defendant's position.  *Compare Gallaher v. Waving Leaves, Inc*., 2006 WL 898130 at *2 (N.D.W. Va. 2006) (the automatic stay does not bar consideration of a motion to remand an improperly removed case); *Diebel v. S.B. Trucking Co.*, 262 F. Supp. 2d 1319, 1333 (S.D. Fla. 2003) (same); *Verizon Communications, Inc. v. Northpoint Communications Group, Inc*., 262 B.R. 891, 892-93 (D. Del. 2001) (same) *and Baxter Healthcare Corp. v. Hemex Liquidation Trust*, 132 B.R. 863, 867 (N.D. Ill. 1991) (same) *with Liljeberg Enterprises International, LLC v. Vista Hospital, Inc*., 2004 WL 2725965 at *1 (E.D. La. 2004) (the

---

[4]The defendant does not explain why, if its position is correct, its removal did not itself violate the automatic stay.  Nor does it explain why any such violation is entitled to preferred treatment in federal court.  Nevertheless, the plaintiffs do not seek, and the Court does not order, remand based on any violation of the automatic stay.  As discussed in text, remand is ordered based on the absence of subject matter jurisdiction.

[5]This dichotomy between debtor defendants and non-debtor defendants underscores another puzzling aspect of the removal.  Under Section 1452(a), a party may remove "any claim or cause of action in a civil action" that is "related to" a bankruptcy proceeding.  The plaintiffs' claims against the debtor likely are related to the debtor's bankruptcy case, but the other four defendants have not explained how the plaintiffs' claims do or even could relate to the debtor's bankruptcy case.  This is presumably the basis of the plaintiffs' promised future challenge to "related to" jurisdiction.

automatic stay does prohibit considering such motions).

For the reasons set forth above, the defendants' motion to stay, (Doc. 13), is **denied**.

Section 1452(a) provides in pertinent part as follows:

> A party may remove any claim or cause of action in a civil action other than [proceedings before the Tax Court and civil enforcement actions by a governmental unit], to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title [which provides jurisdiction over civil proceedings arising under Title 11 or arising in or related to cases under Title 11].

The plaintiffs argue that such removal is precluded by ILSA, which provides in pertinent part as follows:

> No case arising under this chapter and brought in any State court of competent jurisdiction shall be removed to any court of the United States, except where the United States or any officer or employee of the United States in his official capacity is a party.

15 U.S.C. § 1719.

The tension between the two provisions is palpable. Section 1719 categorically prohibits the removal of cases arising under ILSA, while Section 1452(a) categorically permits the removal of claims or causes of action presented in civil actions arising in or related to bankruptcy cases. When the irresistible force of Section 1452(a) meets the immovable object of Section 1719, which prevails?

That precise question apparently has never been answered. A number of courts, however, have grappled with the similar issue of the interplay between Section 1452(a) and Section 22(a) of the Securities Act of 1933. That section provides, in absolute language parallel to that employed in Section 1719, that "[n]o case arising under this subchapter and brought in any State court of competent jurisdiction shall be removed to any court of the United States." 15 U.S.C. § 77v(a). While several district courts have ruled that Section 22(a) trumps Section 1452(a), the Second Circuit has reached the

opposite conclusion.  Unsurprisingly, the plaintiffs rely on the former while the defendants trumpet the latter.  The Court considers them all but adopts the reasoning of none.

The lower court decisions involving Section 22(a) relied decisively on the rule of statutory construction that a specific statute takes priority over a general statute, regardless of their respective dates of enactment.  *City of Birmingham Retirement & Relief Fund v. Citigroup, Inc*., 2003 WL 22697225 at *3 (N.D. Ala. 2003); *Tennessee Consolidated Retirement System v. Citigroup, Inc*., 2003 WL 190841 at *3 (M.D. Tenn. 2003) (citing *Bulova Watch Co. v. United States*, 365 U.S. 753, 758 (1961)).  The threshold question, though, is whether Section 1719 is a specific statute and Section 1452(a) a general one for purposes of this rule.

The *Tennessee* Court concluded that Section 22(a) is a specific statute, apparently because it bars removal and/or because it was amended in 1998, after Section 1452(a) was enacted.  2003 WL 190841 at *3.  The *Tennessee* Court concluded that Section 1452(a) is a general statute, but it did not articulate its reasoning.  *Id*.  The *Birmingham* Court accepted *Tennessee*'s conclusions without amplification.  2003 WL 22697225 at *3.  That Section 22(a) bars removal is insufficient grounds to classify it but not Section 1452(a) as a specific statute, because the latter provision is equally forceful.  Nor can the amendment to Section 22(a) justify finding it to be specific, both because the amendment did not address or alter the removal provision and because categorization of a statute as specific is unrelated to recency of amendment.  In any event, Section 1719 has not been amended.

The Second Circuit concluded that Sections 22(a) and 1452(a) are comparably specific, such that neither could trump the other based on specificity, because neither statute "cover[s] only a subset of the claims covered by" the other.  *California Public Employees' Retirement System v. Worldcom, Inc*., 368 F.3d 86, 102 (2nd Cir. 2004).  Instead, Section 22(a) "applies to numerous claims that are in no way 'related to' a

bankruptcy, just as Section 1452(a) applies to numerous claims that are not brought under the 1933 Act." *Id*. at 103.[6] The same is true of Sections 1719 and 1452(a): most ILSA claims are unrelated to a bankruptcy, and Section 1452(a) most often applies to non-ILSA claims. Thus, applying *Worldcom* here would defeat the plaintiffs' efforts to invoke the rule of construction on which they rely.

The Court agrees that, in order to invoke that rule, a statute must be not merely specific but more specific than another; otherwise, the other statute cannot be deemed general. The terms are necessarily correlative, and for purposes of the rule of construction a statute cannot be specific or general except as compared to another. The Court also agrees that the rule may be triggered when one provision addresses only a completely enclosed subset of another.[7] However, this is not its only field of operation, as reflected by the very case on which *Worldcom* relied. In *Radzanower v. Touche Ross & Co.*, 426 U.S. 148 (1976), the venue provision of the National Bank Act was considered specific and the venue provision of the Securities Exchange Act of 1934 ("the 1934 Act") was considered general, *id*. at 153-54, even though national banks are sued for many things other than securities violations and many entities other than national banks are sued for securities violations.[8]

---

[6]The *Worldcom* Court contrasted Section 1452(a) with 28 U.S.C. § 1441(a). Because the latter statute applies to all removals, Section 22(a) applies to a fully enclosed subset of Section 1441(a)'s universe and so is a more specific statute than Section 1441(a). 368 F.3d at 102-03.

[7]*E.g., ConArt, Inc. v. Hellmuth, Obata + Kassabaum, Inc*., 504 F.3d 1208, 1210 (11th Cir. 2007) ("[W]hen presented with a potential overlap between the broadly sweeping terms of a statute of general application that appear to apply to an entire class, and the narrow but specific terms of a statute that apply to only a subgroup of that class, we avoid conflict between the two by reading the specific as an exception to the general.").

[8]The defendants argue that *ConArt* adopts a "subset" restriction. As reflected in the quote above, *ConArt* did not say that the more specific statute would prevail *only* if it applies exclusively to a fully enclosed subset of the more general statute. Nor would the

In language unnoted by the *Worldcom* Court, the *Radzanower* Court began its discussion with the following pronouncement: "It is a basic principle of statutory construction that a statute dealing with a narrow, precise, and specific subject is not submerged by a later enacted statute covering a more generalized spectrum." 426 U.S. at 152.  At least in such a situation, application of the rule of construction cannot depend on whether the prior statute is a fully enclosed subset of the later, more general statute, else *Radzanower* could not have reached the result it did.  The questions that case poses are whether the earlier statute addresses a "narrow, precise, and specific subject" and whether the later statute "cover[s] a more generalized spectrum."[9]  As discussed below, in this case both queries are answered favorably to the plaintiffs.

The National Bank Act, dating from the nineteenth century, limits the venue of suits against national banks to the district where they are established.  The 1934 Act allows venue in any district where the defendant may be found.  *Radzanower*, 426 U.S. at 149-50.  The Supreme Court considered the National Bank Act's venue provision as dealing with a narrow, precise and specific subject because Congress "focus[ed] on the particularized problems of national banks that might be sued in the state or federal courts." 426 U.S. at 153.  It considered the 1934 Act's venue provision as covering a more generalized spectrum because Congress focused on "the objective of promoting fair dealing in the securities markets" and considered "the broad universe of potential defendants subject to the prohibitions of that Act." *Id.* at 154.

The "narrow, precise and specific subject" Congress addressed in the National

---

authorities to which *ConArt* cited support such a conclusion.  The defendants also offer *Katz v. Gerardi*, 552 F.3d 558 (7th Cir. 2009), as confirming *Worldcom*'s "subset" restriction.  Perhaps it did, but without any discussion of *Radzanower* or identification of any authority, beyond *Worldcom*, for its position. *Id.* at 561-62.

[9]What this means, among other things, is that it is legally irrelevant whether the later statute is specific as to matters the earlier statute did not address.  The narrow, precise, specific subject of the earlier enactment establishes the playing field.

Bank Act was, "Where may a national bank be sued?", and the answer given was, "In the district of its establishment."  The equally narrow, precise and specific subject Congress addressed in Section 1719 was, "When may an ILSA claim be removed?", and the answer given was, "Never."  The 1934 Act "cover[ed] a more generalized spectrum" because it did not address only the venue of securities actions against national banks but the venue of securities actions against all defendants.  Just so, Section 1452(a) covers a more generalized spectrum because it does not address only the removal of ILSA claims related to bankruptcy cases but the removal of all claims related to bankruptcy cases.

  The *Worldcom* Court was of course aware of *Radzanower*, but it concluded the opinion "carries no weight here."  368 F.3d at 102.  It did so because, while Sections 22(a) and 1452(a) (and the 1934 Act) apply to a defined class of *claims*, the National Bank Act venue provision applies to a defined class of *litigants*.  *Id*.  It is not clear why this should make any difference, but in any event a statute that can be described in terms of the claims it affects can with equal ease also be described in terms of the litigants it affects.  Section 1719 does prevent the removal of ILSA *claims*, but it is correspondingly true that it protects ILSA *plaintiffs* from removal.[10]  The Supreme Court itself used the perspectives interchangeably, describing the 1934 Act's venue provision as "allow[ing] suits" (i.e., claims) in any district where the defendant is found, and later describing the same venue provision as "applicable to the broad universe of potential defendants" (i.e., litigants) subject to the 1934 Act.  426 U.S. at 149, 154.  The Court finds the claim-litigant distinction unhelpful and not a reason to ignore Supreme Court authority illustrating how to identify specific and general statutes.

  Because Section 1719, the earlier enactment, deals with a narrow, precise and

---

[10] Indeed, while the parties have elected not to identify or address legislative history, it is difficult to imagine why Congress would have precluded removal of ILSA claims other than to protect plaintiffs in their choice of forum.  Since ILSA claims can be brought in federal court, Congress could not have been motivated by a concern over having such claims in the federal system.

specific subject while Section 1452(a) covers a more generalized spectrum, removal is proper only if "it can be fairly concluded that [Section 1452(a)] operated as a pro tanto repeal of [Section 1719]." *Radzanower*, 426 U.S. at 154.  Section 1452(a) did not expressly repeal Section 1719, and repeals by implication are disfavored.  *Id*.  One of the two available means of demonstrating an implied repeal — a showing that the latter act "covers the whole subject of the earlier one and is clearly intended as a substitute," *id*. (internal quotes omitted) — has no application here, because Section 1452(a) does not cover the whole subject matter of Section 1719; Section 1452(a) addresses only the removal vel non of ILSA claims that are related to bankruptcy cases, while the subject matter of Section 1719 extends to all ILSA claims, including the vast majority that are not related to bankruptcy cases.  Just as the 1934 Act could not have served as a substitute for the National Bank Act, since it "was enacted primarily to halt securities fraud, not to regulate banks," *Radzanower*, 426 U.S. at 157, the Bankruptcy Amendments and Federal Judgeship Act of 1984 (of which Section 1452(a) is a small part) could not have served as a substitute for ILSA, since it was enacted primarily to deal with bankruptcies, not interstate land sales.

That leaves the defendants to show that Sections 1452(a) and 1719 are "in irreconcilable conflict." *Radzanower*, 426 U.S. at 155.  This is not an easy task.  For starters, "[i]t is not enough to show that the two statutes produce differing results when applied to the same factual situation, for that no more than states the problem." *Id*.  Thus, the mere fact that Section 1452(a) allows removal and Section 1719 prohibits removal does not resolve the question but merely presents it.

Irreconcilable conflict between statutes exists only if "there is a positive repugnancy between them or ... they cannot mutually coexist." *Radzanower*, 426 U.S. at 155.  "Repeal is to be regarded as implied only if necessary to make [the later enacted law] work ...." *Id*. (internal quotes omitted); *accord id.* at 156.  This does not mean that the later statute must be honored in every detail and every situation, which would make

implied repeal automatic rather than disfavored.  Instead, the question is whether "the basic purposes of the [later act] can be fairly served by giving full effect to [the earlier act]."  *Id*. at 155.  The relevant basic purposes are those of the act in toto, not merely of the specific overlapping provision. *Id*. at 155-56.  If the earlier statute "will not unduly interfere" in this sense with the operation of the later act, there can be no irreconcilable conflict.  *Id*. (internal quotes omitted).

The *Radzanower* Court identified two reasons that the National Bank Act's venue provision was not in irreconcilable conflict with the 1934 Act.  First, it "will have no impact whatever upon the vast majority of lawsuits brought under" the 1934 Act, since most such suits would not be brought against national banks.  426 U.S. at 156.  Likewise, Section 1719 will have no impact at all on most removals under Section 1452(a), since most claims in state court that are related to bankruptcy cases are not ILSA cases.

Second, the *Radzanower* Court noted that even "[i]n the tiny fraction of litigation where its effect will be felt, it will foreclose nobody from invoking the Act's provisions." 426 U.S. at 156.  As in *Radzanower*, there will be a "tiny fraction" of Section 1452(a) removals that will be blocked by Section 1719.  Given that the interplay between these sections apparently has never been judicially discussed in the 25 years since Section 1452(a) was enacted and that there are hundreds of federal opinions available online discussing or mentioning removal under Section 1452(a), that fraction appears to approach zero.  Nothing in *Radzanower* suggests that such a microscopic sliver of cases susceptible of potential impact by Section 1719 is sufficient to defeat the basic purposes of the 1984 Act, much less of Title 11 generally.  This is especially so given that: (1) removal under Section 1452(a) is permissive, not mandatory, so that Congress recognized that litigants could choose not to remove; (2) even following removal, courts are authorized to abstain from hearing particular proceedings arising in or related to a bankruptcy case, 28 U.S.C. § 1334(c), so that Congress envisioned that federal courts could defer to state courts to resolve claims removable under Section 1452(a); and (3)

remand of cases removed under Section 1452(a) is almost always unreviewable on appeal,[11] so that Congress understood that erroneous remands could not be corrected. Congress thus knew and accepted that there would be gaps in federal court resolution of claims related to bankruptcy cases, and the extremely small potential increase in that gap produced by Section 1719 "will not unduly interfere" with the Bankruptcy Code's operation or prevent the "basic purposes" of the Code from being "fairly served." Certainly, as in *Radzanower*, Section 1719 "will foreclose nobody from invoking the [Bankruptcy Code's] provisions."

The defendants do not come to grips with, or even acknowledge, *Radzanower*. Instead, they refer the Court generally to *Worldcom*. The Second Circuit cited the "will not unduly interfere" portion of *Radzanower*, but it actually applied a more modest "could interfere" standard, which it then equated with "can, in some circumstances, affect the administration of a bankrupt estate." 368 F.3d at 102-04. Almost anything could in some circumstances affect the operation of a general statute, but that is not the rigorous test *Radzanower* requires.

The defendants emphasize that *Worldcom* focused on the textual difference between Section 1452(a) and 28 U.S.C. § 1441(a). The latter, general removal statute allows removal "[e]xcept as otherwise expressly provided by Act of Congress." The Second Circuit deemed "[t]he absence of a [sic] such a crucial exception in the language of Section 1452(a) [to] sugges[t] that ... Congress did not intend for Section 22(a) and its analogues to bar removal of 'related to' claims." 368 F.3d at 106. By the time the *Worldcom* Court reached this conclusion, it had already determined that Section 22(a) was not a more specific statute not in irreconcilable conflict with Section 1452(a), which left it free to explore other rules of construction for resolving the tension between the two

---

[11]*Things Remembered*, 516 U.S. at 127-29 (remands of Section 1452(a) removals based on lack of subject matter jurisdiction or defects in removal procedure cannot be reviewed on appeal); 28 U.S.C. § 1452(b) (remands of Section 1452(a) removals based on equitable grounds cannot be reviewed on appeal).

statutes. Because the Court has reached an opposite conclusion with respect to Section 1719, the matter of statutory construction is closed.

"In removal cases, the burden is on the party who sought removal to demonstrate that federal jurisdiction exists." *Friedman v. New York Life Insurance Co.*, 410 F.3d 1350, 1353 (11th Cir. 2005) (internal quotes omitted). This burden extends to making and supporting the arguments necessary to sustain removal. *Cf. Ervast v. Flexible Products, Inc.*, 346 F.3d 1007, 1012 n.4 (11th Cir. 2003) (court would not consider a basis for removal that the defendant did not mention in its notice of removal). The defendants elected to support removal simply by pointing to *Worldcom*, and they thereby risked remand if the Court (as it has) disagreed with that decision. No duty devolved upon the Court to perform additional legal research or construct additional arguments on the defendants' behalf. *Cf. Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) ("There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment."). The analysis above, while the fruit of the Court's conscientious effort to address the limited presentation of the parties, should not be understood as a definitive treatment of the interplay between Sections 1719 and 1452(a), the applicable rules of statutory construction, or the analysis set forth in *Radzanower*. Based on the argument and authority presented, the motions to remand are **granted**. This action is **remanded** to the Circuit Court of Mobile County.[12]

---

[12]The plaintiffs' motions to abstain, (Docs. 22, 24), are denied as moot. The defendants' motion to transfer, (Doc. 14), is **denied as moot**. The plaintiffs' requests for costs and attorney's fees, (Docs. 22, 24), are **denied**. Absent unusual circumstances, fees under Section 1447(c) are inappropriate when the removing party had an "objectively reasonable basis" for removal. *Bauknight v. Monroe County*, 446 F.3d 1327, 1329 (11th Cir. 2006) (internal quotes omitted). The Second Circuit's decision in *Worldcom* provided the removing defendant such a basis, and the plaintiffs identify no unusual circumstances justifying an award.

DONE and ORDERED this 27th day of August, 2009.

                                              s/ WILLIAM H. STEELE
                                              UNITED STATES DISTRICT JUDGE